630 P.2d 155

INTERNATIONAL ENGINEERING COMPANY, INC., a corporation, and Emkay Development and Realty Company, Plaintiffs-Appellants,

v.

DAUM INDUSTRIES, INC., a corporation, and Double "D" Land, Inc., a corporation, Defendants-Respondents.

No. 13377.

Supreme Court of Idaho.

June 15, 1981.

Richard G. Smith and Gary D. Babbitt, Boise, for plaintiffs-appellants.

Robert H. Copple, Boise, for defendants-respondents.

SHEPARD, Justice.

This is an appeal from a judgment entered following a trial to the court. The appeal primarily concerns conflicting claims by joint venturers to a promissory note upon dissolution of the joint venture. We affirm.

In 1970 Morrison-Knudsen and Daum Industries became joint venturers in Makad, Inc. a corporation organized for the purpose of developing and operating retail shopping centers. Each owned 50% of Makad's capital stock. Daum acted as the leasing and managing agent for the venture. One of those shopping centers was the Country Club Center in Idaho Falls, Idaho. In 1974 management disagreements resulted in the parties' decision to terminate the venture. Two agreements executed in July of that year purported to formalize the terms of that dissolution. The basic agreement was that Daum would redeem all of its stock in Makad in exchange for its receipt of all interest in the Idaho Falls shopping center.

In August of 1971 Carroll's, Inc., a women's clothing retailer, leased space in the Idaho Falls center for a term of ten years. The rental fee and the possibility of a fixturing allowance were the subject of substantial negotiation prior to the execution of the Carroll's lease. Carroll's initially offered to pay $4.30 per square foot ($12,040 annually), plus five per cent of their gross annual sales exceeding $240,800, provided they were given a $20,000 fixture allowance. Ultimately, the parties agreed to a lease based on $3.50 per square foot ($9,800 annually), plus five per cent of their gross annual sales exceeding $196,000. Makad advanced $20,000 to be used for the purchase and installation of trade fixtures and Carroll's so used that money. Carroll's executed a ten year promissory note payable to Makad in the face amount of $20,000, which was secured by the trade fixtures, pursuant to article 9 of the Uniform Commercial Code. Daum held that note as collection agent and received payments from Carroll's on behalf of Makad.

Following dissolution of the joint venture, Daum retained possession of the note and Carroll's began making payments thereon to Daum. Some months later Makad (now known at Emkay and consisting only of Morrison-Knudsen) demanded the note and when Daum refused to deliver the note, Emkay commenced suit.

At trial defendant-respondent Daum argued that in the July dissolution agreements Makad transferred "all of its interests" in the Idaho Falls center and that "all of its interests" included the Carroll's note. Plaintiff-appellant Emkay conversely contended that "all of Makad's interests" meant only its operating assets in the center and did not include the note. Daum asserted that the promissory note, taken together with the lower rental rates, was simply another form of fixturing allowance, that the note obligation was essentially the equivalent of rent and thus the note was an incident of and an interest in the Idaho Falls shopping center. Emkay replied that the note was merely a loan to Carroll's, had no substantial relation to rent and thus was

not an interest in that specific Idaho Falls shopping center.

In an effort to ascertain the intent of the parties regarding ownership of the note, testimonial and documentary evidence outside the written dissolution contracts was offered by both parties. There is no claim here that any of such extrinsic evidence was improperly admitted. The trial court held that the phrase "all interests in the Idaho Falls center" was intended to include the Carroll's note in the transfer to Daum and required Emkay to execute an assignment of the note to Daum.

■ Where the language of a written agreement is clear and unambiguous, the trial court will give effect to the language employed according to its ordinary meaning, *J. R. Simplot Co. v. Chambers*, 82 Idaho 104, 350 P.2d 211 (1960); *Durant v. Snyder*, 65 Idaho 678, 151 P.2d 776 (1944), determination of its meaning and legal effect being a question of law. *Beal v. Mars Larson Ranch Corp., Inc.*, 99 Idaho 662, 586 P.2d 1378 (1978); *Parks v. City of Pocatello*, 91 Idaho 241, 419 P.2d 683 (1966).

■ But when the terms of a written contract are ambiguous, its interpretation and meaning become a question of fact and extrinsic evidence may be considered by the trier of fact in an attempt to arrive at the true intent of the contracting parties. *Roberts v. Hollandsworth*, 582 F.2d 496 (9th Cir. 1978); *Bergkamp v. Carrico*, 101 Idaho 365, 613 P.2d 376 (1980); *Puchner v. Allatt*, 101 Idaho 37, 607 P.2d 1091 (1980); *Werry v. Phillips Petroleum Co.*, 97 Idaho 130, 540 P.2d 792 (1975); *Rudeen v. Howell*, 76 Idaho 365, 283 P.2d 587 (1955). In so doing the trier of fact may consider the objective and purpose of the particular provision and may also scrutinize the circumstances surrounding formation of the contract. *Id.*

■ If a contract is reasonably subject to conflicting interpretations, it is ambiguous. *Rutter v. McLaughlin*, 101 Idaho 292, 612 P.2d 135 (1980). Where interpretation of the parties' agreement becomes a question of fact, this Court will not set aside the trial court's finding unless it is clearly erro-

neous. *Id.*; I.R.C.P. 52(a). *See Torix v. Allred*, 100 Idaho 905, 606 P.2d 1334 (1980).

■ Here the provisions of the dissolution contract are ambiguous and unclear as to whether the Carroll's note is an interest in and to "property and assets" of the Idaho Falls shopping center and thereby intended to be transferred to Daum or whether the Carroll's note is an obligation to the overall Makad joint venture. The contracts themselves neither specifically include the note with nor exclude it from the Daum transfer and the general language of the contracts is reasonably susceptible to both interpretations. For example, the July 30 dissolution agreement provides in pertinent part:

"*Consideration* : In consideration for the surrender by Daum of all of its said shares of stock in Makad, Makad shall, subject to provisions of paragraph 12 below, transfer and distribute to Daum all of Makad's right, title, and interest in and to all the property and assets now owned and used by Makad in the conduct of that certain shopping center located in Idaho Falls, Idaho known as 'Country Club Center' (herein called the 'Center') and which are now located at the Center, including:

"(a) [the real property and real property interests]

"(b) all furniture, fixtures, equipment and supplies now located at the Center, and all contracts, licenses, permits and deposits made by or granted to Makad relating to the property and assets to be transferred hereunder or to the business of the Center."

The above noted ambiguity and unclear language illustrate the propriety of the trial court's admission of extrinsic evidence to clarify the parties' intent and made the resolution of that ambiguity a question of fact. That extrinsic evidence is conflicting regarding the negotiations preceding the Makad-Carroll's lease, the note's relationship to a fixturing allowance and its equivalency to rent, the negotiations regarding redemption of Daum's stock in Makad, the consideration therefor and the parties' intent as to future ownership of the note. A

decision that the note was included with or excluded from the Idaho Falls shopping center transfer to Daum would have been supported by the record. We therefore affirm the trial court's decision that the parties intended Daum to receive the note.

Appellant Emkay also asserts that the trial court erred in its refusal to award Emkay costs and attorney fees for certain claims upon which it prevailed on partial summary judgment. Emkay and its affiliate International Engineering based the complaint against Daum and its affiliate Double "D" Land on four counts. Count one of the complaint was the claim by Emkay relating to the ownership of the Carroll's note discussed above. Count two was a claim by Emkay against Daum for payment due upon another note in the amount of $9,823. Counts three and four were claims by International against Double "D" and Daum for sums owed for engineering services.

In September, 1978 plaintiffs' motion for summary judgment was granted on claims two, three and four and on those three claims plaintiffs were awarded costs and attorney fees. In November defendants moved for and were granted a stay of execution and a reservation of the award of attorney fees and costs pending final resolution of the remaining claim on the Carroll's note. Also, the partial summary judgment was made subject to possible future revision. The outcome following trial was that Daum prevailed regarding the Carroll's note, Emkay recovered $9,823 on the second note and International prevailed on its $3,405 claim against Double "D" and its $470 claim against Daum. The court at that point ruled that all parties should pay their own costs and attorney fees.

Emkay asserts that attorney fees should have been granted to plaintiffs as a matter of right pursuant to I.C. § 12–120(2) for counts three and four since they were either open accounts or accounts stated and

also for count two because it was for recovery on a note.[1] Emkay further asserts that count one upon which Daum prevailed did not come within I.C. § 12–120(2) since it was a claim for *ownership* of a note as contrasted with a *recovery* thereon. Emkay further asserts that costs should have been awarded to the plaintiffs for counts two through four as a matter of right pursuant to I.R.C.P. 54(d)(1)(A). The theory of Emkay appears to be that a trial court must first separate a multiple claim action into I.C. § 12–120 and I.C. § 12–121 categories, determine the prevailing party within each category and then award costs and attorney fees as a matter of right to any party prevailing on I.C. § 12–120 claims. We disagree.

I.R.C.P. 54(d)(1)(B) provides:

"Prevailing Party. In determining which party to an action is a prevailing party and entitled to costs, the trial court shall in its sound discretion consider the final judgment or result of the action in relation to the relief sought by the respective parties, whether there were multiple claims, multiple issues, counterclaims, third party claims, cross-claims, or other multiple or cross issues between the parties, and the extent to which each party prevailed upon each of such issues or claims. The trial court in its sound discretion may determine that a party to an action prevailed in part and did not prevail in part, and upon so finding may apportion the costs between and among the parties in a fair and equitable manner after considering all of the issues and claims involved in the action and the resultant judgment or judgments obtained."

Thus a trial court is vested with broad discretion to determine the prevailing party in a multiple claim action. Here the record indicates that the trial court felt that because plaintiffs had prevailed on some claims and defendant Daum had prevailed

---

1. "In any civil action to recover on an open account, account stated, note, bill, negotiable instrument, or contract relating to the purchase or sale of goods, wares, or merchandise, unless otherwise provided by law, the prevailing party shall be allowed a reasonable attorney fee to be set by the court, to be taxed and collected as costs." I.C. § 12–120(2).

on the claim regarding the ownership of the Carroll's note, there was no overall prevailing party. We find no abuse of discretion in such decision. I.R.C.P. 54(d)(1)(A), which authorizes costs to the prevailing party, and I.C. § 12–120(2), which authorizes attorney fees to a prevailing party, are not applicable where, as here, there is no prevailing party.[2]

The judgment in its entirety is affirmed. Costs to respondents.

McFADDEN, BISTLINE and DONALD-SON, JJ., and SCOGGIN, J., pro tem., concur.

---

2. Plaintiff International Engineering did not appeal from the final judgment denying attorney fees and costs to all parties. Therefore, the rulings of the trial court upon counts three and four asserted by Emkay as error were not even properly before this Court.